1

2

3

4

5                     IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    NAOMI WALTON,                            No. C 03-01460 SI

9              Plaintiff,                     **ORDER GRANTING DEFENDANTS'**
      v.                                      **MOTION FOR SUMMARY JUDGMENT**
10
     U.S. MARSHALS SERVICE, et al.,
11
               Defendants.
12   _____/

13
          Defendants have filed a motion for summary judgment.  Having carefully considered the argument of

14   counsel and the papers submitted on the motion,[1] the Court hereby GRANTS defendants' motion for summary

15   judgment.

16

17                                   **BACKGROUND**

18        Plaintiff was employed for fourteen years as a court security officer ("CSO") by Akal Security.  CSOs

19   guard courthouse entrances, screen visitors, inspect packages and mail, and provide a security presence in

20   courtrooms.  Akal has been contracted by the United States Marshal Service ("USMS") to provide security

21   at federal courthouses in the Ninth Circuit. CSOs must meet physical requirements established in the contract

22   between Akal and USMS through yearly physical examinations.

23        Until 2000, CSOs were evaluated for medical conditions using a federal Civil Service form developed

24   in the 1960's.  In 1999, the United States Judicial Conference, which oversees the judicial security program,

25   requested a job-task analysis of the CSO position.  In response to that request, Dr. Richard Miller, Director

26

27   _____

28        [1] The Court has reviewed and considered Plaintiff's Statement of Recent Decision and supplemental
     memo, filed July 25, 2005 (docket #213).

*United States District Court*
*For the Northern District of California*

of Law Enforcement Medical Programs for the Office of Federal Occupational Health, produced a report recommending changes to the physical requirements for CSOs. Dr. Miller's report was largely adopted by the Judicial Conference, which directed the USMS to implement a number of changes to CSO medical standards. Some of these changes involved minimum hearing standards which must be met without the use of hearing aids. However, the Judicial Conference allowed CSOs who pass the hearing test without hearing aids to wear hearing aids on the job.

In November 2001, plaintiff underwent audiological testing. On January 17, 2002, Dr. Chelton, a medical review officer for the Office of Federal Occupational Health, reviewed plaintiff's medical submission and found that it did not meet the required standard. In response, plaintiff performed another audiogram test on April 5, 2002. Dr. Chelton reviewed the additional results on May 31, 2002 and found that plaintiff has "a significant hearing impairment according to the results of the tests provided." Specifically, plaintiff tested to have a disparity between her right and left ear in her ability to detect sound. This disparity would impact her ability to localize sound. Localizing sound is the "ability to identify the direction and distance of a sound source outside the head." Benay Decl, Ex. Z at USA000571. Based on the test results, Dr. Chelton concluded that plaintiff was not qualified to perform the job of CSO. As a result, USMS disqualified plaintiff from her position as a CSO. Due to her disqualification, plaintiff's employment with Akal was terminated.

Plaintiff brought suit in this Court, alleging that she has suffered and continues to suffer irreparable harm after being terminated. In her Third Amended Complaint, plaintiff has sued various individuals and federal agencies under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Administrative Procedures Act, 5 U.S.C. § 701 et seq. The Court denied plaintiff's motion for summary judgment on January 24, 2005. Defendants now bring their motion for summary judgment.

## LEGAL STANDARD

### I.    Summary judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears

the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

## II.    Rehabilitation Act

To state a prima facie case under the Rehabilitation Act, plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability.  See Lucero v. Hart., 915 F.2d 1367, 1371 (9th Cir. 1990); Reynolds v. Brock, 815 F.2d 571, 573-74 (9th Cir. 1987).  Once a plaintiff has made out a prima facie case, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse employment action.  Once the defendant articulates such a reason, the plaintiff must then offer evidence to show that the defendant's proffered reason is a pretext for discrimination or retaliation for protected activity.  See Lucero, 915 F.2d at 1371.

## DISCUSSION

## I.    Proper defendants

Under the Rehabilitation Act, the proper defendant is the head of the government agency against which

discrimination is alleged.  See Barsen v. Department of the Interior, 896 F.2d 422, 423 (9th Cir. 1990); Dean v. United States, 484 F.Supp. 888, 898-890 (D.C.N.D.  1980).  Defendants argue that the only proper defendant for plaintiff's Rehabilitation Act claim is Attorney General Alberto Gonzales, as the head of the Department of Justice.  Plaintiff, in her complaint, does not clearly designate which causes of action are brought against each defendant.  Therefore, the Court GRANTS defendants' motion for summary judgment to all defendants except the Attorney General for plaintiff's Rehabilitation Act claim.

Defendants also assert that Marc Farmer, the Chief of the Judicial Protective Services of the United States Marshals Service, is the only proper defendant under plaintiff's Administrative Procedures Act claim. Actions under 5 U.S.C. § 703 may be brought against "the United States, the agency by its official title, or the appropriate officer."  Defendants argue that Farmer made the final agency decision involved in plaintiff's APA claim by approving the decision that plaintiff was not qualified to continue her employment as a CSO.  Plaintiff appears to argue that Farmer, the United States Marshals Service, and the United States Department of Health & Human Services were all involved in plaintiff's termination.

Courts have recognized that "when an instrumentality of the United States is the real defendant," then the plaintiff may name as defendant "the United States, the agency by its official title, or the appropriate officer." Jones v. United States Drug Enforcement Agency, 801 F.Supp. 15, 19 (M.D. Tenn 1992).  Additionally, "[t]he outcome of the case should not turn on the plaintiff's choice."  Id.  Therefore, the Court will allow plaintiff to bring her APA claim against Farmer and the United States Marshals Service, as both were directly responsible for the determination to terminate her employment.  However, the Court GRANTS defendants' motion with respect to all defendants aside from Farmer and the USMS for plaintiff's APA claim.

Given the Court's holding that Attorney General Alberto Gonzales is the only proper defendant for plaintiff's Rehabilitation Act claim and that Farmer and the USMS are the proper defendants for plaintiff's APA claim, the Court now turns to defendants' arguments regarding the merits of those claims.

## II.    Rehabilitation Act

### A.    Is plaintiff "disabled" as defined by the Rehabilitation Act?

The Americans with Disabilities Act ("ADA"), whose standards of substantive liability are incorporated

4

**United States District Court**
For the Northern District of California

in the Rehabilitation Act, defines "disability" as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); <u>Coons v. Secretary of the U.S. Dept. of the Treasury</u>, 383 F.3d 879, 884 (9th Cir. 2004).

### 1. Physical impairment

Defendants request that the Court grant summary judgment with respect to plaintiff's claim that she is actually disabled because plaintiff has not presented any evidence that her hearing impairment substantially limits any major life activity in her daily life. Plaintiff acknowledges that she is not actually disabled as defined under the Rehabilitation Act. <u>See</u> Pl.'s Opp'n at 17. Therefore, the Court GRANTS defendant's motion with respect to the first prong of the definition of "disability" under the Rehabilitation Act.

### 2. Record of a physical impairment

In a single paragraph, plaintiff contends that her audiological testing results demonstrate that she has a record of a disability. Specifically, plaintiff's test results found more than a 25dB difference between the hearing in the right and left ear. Benay Decl., Ex. U at ¶ 5.

A record of an impairment "means [that the individual has] a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). "The purpose of this provision is largely to protect those who have recovered or are recovering from substantially limiting impairments from discrimination based on their medical history." <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1169 (1st Cir. 2002); <u>see also</u> 9 Lex K. Larson <u>Employment Discrimination</u> § 153.08, at 153-62 ("A worker without a current impairment may nevertheless benefit from . . . protection if he or she has a record of a substantially limiting impairment"). Plaintiff has not produced any evidence that she has a medical history of hearing loss, as plaintiff was not aware of her limitation until the testing under the new CSO medical standards. Plaintiff also has not produced any evidence that she has recovered her ability to localize sound; in fact, plaintiff still has the impairment documented in her test results. Therefore, the Court GRANTS defendants' motion with respect to the second prong of "disability" under the Rehabilitation Act.

**United States District Court**
For the Northern District of California

### 3.    Regarded as having an impairment

Plaintiff asserts that she is "disabled" under the Rehabilitation Act because the USMS "regarded" her as having an impairment that substantially limits the major life activities of working and hearing.

In <u>Equal Employment Opportunity Commission v. United Parcel Service</u>, 306 F.3d 794 (9th Cir. 2002),[2] the Ninth Circuit stated that "the Supreme Court has held that a person is 'regarded as' disabled (at least for purposes of the major life activity of working) if the covered entity 'mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.'" 306 F.3d at 804 (citing <u>Murphy v. United Parcel Service, Inc.</u>, 527 U.S. 516, 521-22 (1999)).   The court then cited the following passage from <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 489 (1999):

> There are two apparent ways in which individuals may fall within this statutory definition: 1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or 2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantial limiting impairment that one does not have or that one has a substantial limiting impairment when, in fact, the impairment is not so limiting.  These misperceptions often result from stereotypic assumptions not truly indicative of individual ability.

<u>EEOC v. UPS</u>, 306 F.3d at 803.

The court also recognized that perceived impairments must be "substantially limiting and significant." <u>Id.</u>  In <u>EEOC v. UPS</u>, the court dealt with an ADA claim by plaintiffs with monocular vision, who did not qualify as drivers because of defendant's vision protocol.  When evaluating the claim of a plaintiff alleging that defendant "regarded" him as disabled, the Ninth Circuit found that in order to satisfy the requirements provided in <u>Sutton</u>, plaintiffs must demonstrate that defendant "regarded their vision impairment as substantially limiting their overall ability to see for daily living." <u>Id.</u> at 806.  Although <u>Sutton</u> applied to the major life activity of working, the court found the test to be equally applicable to seeing. <u>Id.</u> at 804.  Therefore, the standard also applies for plaintiff's claim with respect to hearing.

---

[2] This Court's January 20, 2005 order denying plaintiff's motion for summary judgment paid insufficient attention to the standards set out by the Ninth Circuit in <u>EEOC v. UPS</u>.  Accordingly, they are set out at more length here.

United States District Court

For the Northern District of California

### i.    Working

Working is a major life activity under the ADA.  29 C.F.R. § 1630.2(i).  Additionally, the major life activity of work contains a specific definition of "substantially limits":

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff presents no evidence that defendants mistakenly believe that plaintiff has a substantially limiting impairment that plaintiff does not actually have.  Instead, the parties agree on the extent of plaintiff's impairment based on the auditory test results.

Plaintiff has presented evidence that defendants believed that plaintiff's limiting impairment could preclude her from various law enforcement positions.  Benay Decl., Ex. E at 289; Benay Decl., Ex. F at 78.  However, plaintiff's evidence is limited to active duty, weapons-carrying law enforcement positions. "An active law enforcement position [is] not a broad enough job category to be a substantial limitation on working."  Bass v. The County of Butte, 2004 WL 1925468, * 5 (E.D. Cal. 2004).  For example, many courts have recognized that "being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity."  Daley v. Koch, 892 F.2d 212, 215-16 (2d Cr. 1989); see also Rossbach v. City of Miami, 371 F.3d 1354, 1361 (11th Cir. 2004).

Instead, the proper scope of plaintiff's occupation is "law enforcement generally."  Hughes v. Bedsole, 48 F.3d 1376, 1388-89 (4th Cir. 1995); Papadopoulos v. Modesto Police Department, 31 F.Supp.2d 1209, 1221 (E.D. Cal. 1998) (holding that position of background investigator was "law enforcement work"); Smaw v. Virginia Department of State Police, 862 F.Supp. 1469, 1475 (E.D. Va. 1994) (holding that former state trooper demoted to dispatcher was still employed in the law enforcement field).   Plaintiff has presented no evidence of defendants' opinion regarding jobs in the field of law enforcement, other than active duty, weapons-carrying government law enforcement positions; therefore, plaintiff has failed to present any evidence in support of her claim that defendants regarded her as significantly restricted in performing a "class" or "broad range" of jobs under the Rehabilitation Act.  The Court GRANTS defendants' motion for summary judgment with

respect to the life activity of working.

### ii.        Hearing

Plaintiff alleges that defendants regard plaintiff as substantially limited in the major life activity of hearing. 29 C.F.R. § 1630.2(i); see 29 C.F.R. § 1360.2(j)(ii) (defining "substantial limitation" as "significantly restricted as to the condition, manner, or duration under which an individual can perform . . . as compared to . . . the average person in the general population"). Plaintiff must demonstrate that defendants regarded plaintiff as having an impairment that prevents or severely restricts use of her hearing in daily life. EEOC v. UPS, 306 F.3d at 806. It is not sufficient for plaintiff to demonstrate that defendants regarded plaintiff as having a limiting, but not substantially limiting, hearing impairment. Id.

Plaintiff was found to be unable to localize sound based on auditory testing established by defendants. However, defendants' hearing requirement does not establish that defendants regard plaintiff as substantially limited in the life activity of hearing. Sutton, 527 U.S. at 490. Instead, "an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment . . . are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." Id. at 490-91.

Defendants have presented evidence that the hearing requirements solely relate to performing the essential functions of the CSO position. Roth Decl. at ¶ 8; Miller Decl. at ¶12; Barson Decl. at ¶ 5(a). In fact, Judge Roth, the chair of the United States Judicial Committee on Security and Facilities, stated that the policy "was in no way intended to reflect a CSO's ability to engage in life activities." Roth Decl. at ¶ 8; see also Miller Decl. at ¶ 12; Barson Decl. at ¶ 5(a). If the USMS recommends removal of the CSO based on medical disqualification, "the USMS does not consider whether the CSO's medical condition . . . affects his or her day-to-day activities. We are only concerned with whether the individual meets the CSO medical standards and is capable of performing the essential functions of the CSO position." Farmer Decl. at ¶ 36.

The determination of the essential CSO functions was made based on a report by Dr. Miller. In order to prepare his report, Dr. Miller visited five district courthouses and spoke with CSOs, federal judges, U.S. Marshals and Deputy U.S. Marshals. Miller Decl. at ¶ 8. Dr. Miller identified 29 essential job functions, which

included the ability to determine the location of sound.  Farmer Decl. at ¶ 26.  Dr. Miller asserted that "[t]he safety of the federal judiciary, court personnel, and the public depends on CSO's ability to hear, localize, discriminate, recognize, and/or understand a variety of environmental and speech sounds."  Miller Decl. at ¶ 20.  Specifically, Dr. Miller found that CSOs "must be able to discern the direction of a disturbance or detect an approaching threat (sound localization)."  Id. at ¶ 22.

Plaintiff took two medical examinations for the CSO position.  Supp. Chelton Decl. at ¶¶ 7, 9. The results of both examinations were reviewed by Dr. Louis Chelton, a reviewing physician for Law Enforcement Medical Programs at the department of Federal Occupational Health.  Id. at ¶ 1.  Dr. Chelton found that plaintiff's "pure tone audiogram did not meet the required standard."  Supp. Chelton Decl. at Ex. 1.  According to Dr. Chelton the disparity between her right and left ear in her ability to detect sound would "impact her ability to perform the essential job function of localizing sound."  Id. at ¶ 7.

Therefore, the "evidence bearing on [defendants'] perception of [plaintiff's] impairment indicates that its perception was not based upon speculation, stereotype, or myth," but was based upon medical test results.  Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995). When Dr. Chelton found that plaintiff was not medically qualified for the CSO position, he stated that "[w]ith only one functioning ear, you are unable to localize the direction of sound, an essential job function."  Benay Decl., Ex. N at 2.  However, none of the above evidence demonstrates that defendants regarded the inability to localize sound and discern the direction of a disturbance as a substantial limitation on hearing in plaintiff's daily life.

Plaintiff presents the declaration of Dr. Robert Sweetow, Director of Audiology at the University of California.  See Supp. Simmons Decl., Ex. 1.  In that declaration, Dr. Sweetow states that the ability to localize sound is "essential" to the manner in which individuals use their sense of hearing.  Id. at 1. He concludes that "being unable to localize sound severely/significantly restricts one's hearing as compared to how unimpaired people normally hear in everyday life."  Id.  However, this evidence does not demonstrate that defendants regarded plaintiff's hearing impairment as "substantially limiting" her "overall ability to [hear] for daily living."  EEOC v. UPS, 306 F.3d at 794.  Instead, Dr. Sweetow provides his medical opinion regarding the general impact of an individual's inability to localize sound.       Plaintiff also refers to a draft report on auditory localization prepared for United States Immigration and Naturalization Services by Dr. Lynn E. Cook, an

occupational audiologist for the U.S. Naval Medical Center.  See Benay Decl., Ex. Z.  In the October 2002 report, Dr. Cook states that auditory localization "allows us to pinpoint the direction of a yell for help or other sound of interest, locate an air leak on a vehicle, locate the position of another person, . . . locate sounds to the floor above or below, [and] locate the direction and distance of a moving vehicle or an emergency siren."  Id. at USA000573.  Dr. Cook also states that "[p]erhaps most importantly, auditory localization allows the listener to quickly locate and attend to the speaker, especially when conversation switches rapidly between speakers."  Id.  However, Dr. Cook found that "[w]hile visual localization of a sound source is generally just as accurate, it is not nearly as efficient (quick) as auditory localization."  Id.  In summary, Dr. Cook determined that "[d]ifficulty in localizing environmental sounds can be inconvenient, and in some situations the impaired listener may be in danger."  Id.

However, Dr. Cook's report does not demonstrate that defendants regarded plaintiff as disabled as defined under the Rehabilitation Act for many reasons.  It is not clear that this excerpt is sufficient to find that Dr. Cook finds individuals who are unable to localize sound to be significantly limited in hearing in their daily life.  Although Dr. Cook lists a number of activities affected by the inability to localize sound, she describes these problems as "inconvenient."

Assuming Dr. Cook finds that individuals who cannot localize are substantially limited in the activity of hearing, plaintiff has not demonstrated that defendants also regarded those individuals as disabled. Dr. Cook was not responsible for creating the CSO medical requirements; instead, she was "periodically consult[ed]" by Dr. Miller. Miller Decl. at ¶ 24.  Dr. Miller was responsible for drafting the policy and has testified that he did not consider an individual's ability to engage in life activities when creating the CSO medical standards.  Id. at ¶ 12.  Dr. Miller also did not rely upon Dr. Cook's opinions with respect to everyday activities, as the "standards reflect input we received from [Dr. Cook] regarding the hearing demands of this type of position and the problems associated with hearing aids."  Id. at ¶ 24.  There is no evidence that defendants considered Dr. Cook's positions with respect to the daily life activity of hearing.  Again, every individual responsible for the creation and implementation of the CSO medical standards stated that the policy does not reflect any opinion about everyday life activities. Roth Decl. at ¶ 8; Miller Decl. at ¶ 12; Barson Decl. at ¶ 5(a); Farmer Decl. at ¶ 36.

United States District Court

For the Northern District of California

1    Even if Dr. Cook's findings are applied to defendants, it is not sufficient to find that defendants regarded

2    plaintiff as disabled in the major life activity of hearing under the Rehabilitation Act.  In Sutton, the Supreme

3    Court held that in order to find that a person is regarded as disabled, "it is necessary that a covered entity

4    entertain misperceptions about the individual – it must believe either that one has a substantial limiting

5    impairment that one does not have or that one has a substantial limiting impairment when, in fact, the impairment

6    is not so limiting."  Sutton, 527 U.S. at 489.

7    Plaintiff has not presented any evidence that defendants have any "misperceptions" with respect to

8    plaintiff's hearing.  Plaintiff does not dispute the test results from multiple medical examinations or defendants'

9    assertion that plaintiff, without hearing aids, has difficulty localizing sound.  Nor does plaintiff present any

10   evidence that defendants believed plaintiff's hearing loss to be more substantial than it really was. Plaintiff also

11   does not present any evidence that defendants have a misperception regarding the limitations of her impairment.

12   In fact, plaintiff's expert, Dr. Sweetow, testifies that the inability to localize sound "severely/significantly restricts

13   one's hearing as compared to how unimpaired people normally hear in everyday life."  Supp. Simmons Decl.,

14   Ex. 1 at 1.   Thus, plaintiff's expert finds that the limitation is as significant, if not more significant, as Dr. Cook's

15   finding that the inability to localize sound is "inconvenient" because impaired individuals have difficulty

16   performing some tasks.  Given the overlap between Dr. Sweetow's and Dr. Cook's findings, plaintiff has failed

17   to present any evidence that defendants had any "misperceptions" about plaintiff.  Therefore, Dr. Cook's

18   testimony does not support plaintiff's assertion that defendants' regarded her as disabled under the

19   Rehabilitation Act.

20   Plaintiff's remaining evidence consists of the defendants' medical requirements for the CSO position

21   and Dr. Chelton's review of plaintiff's examination results.  As the Supreme Court found in Sutton, a hearing

22   requirement alone is not sufficient to establish that defendants regarded plaintiff as substantially limited in the

23   major life activity of hearing.  Dr. Chelton's report only considers plaintiff's examination results with respect

24   to her ability to perform the essential CSO functions.  Dr. Chelton makes no reference to disabilities or

25   limitations on daily life activities.  Therefore, plaintiff has failed to present evidence that defendants regarded

26   plaintiff as substantially limited in the major life activity of hearing and the Court GRANTS summary judgment

27   in favor of defendants.

28

11

**United States District Court**
For the Northern District of California

1

2      **B.      Summary**

3      As discussed above, plaintiff has failed to demonstrate that she is a person with a disability under any

4 of the three definitions of disability in 42 U.S.C. § 12102(2). Being a person with a disability as defined under

5 42 U.S.C. § 12102(2) is one of the three requirements to stating a prima facie case under the Rehabilitation

6 Act. Given that plaintiff has failed to present a prima facie case under the Rehabilitation Act, the Court

7 GRANTS summary judgment in favor of defendant for plaintiff's Rehabilitation Act claim.

8

9 **III.     Administrative Procedures Act**

10      Defendants bring a motion for summary judgment against plaintiff's Administrative Procedures Act

11 claim. Plaintiff brings this claim in the alternative, in order to protect this cause of action if an appellate court

12 finds that the USMS is not a joint employer of plaintiff. However, this Court has found that the USMS meets

13 the requirements of the joint employer test; therefore, plaintiff does not have a valid claim against defendant

14 under the APA at this time. Defendants ask the Court to rule on the merits of plaintiff's claim at this time in

15 order to avoid remand. The Court will not address the merits of a claim that currently is invalid. The Court

16 GRANTS defendants' motion for summary judgment with respect to plaintiff's APA claim; however, if the

17 Court's holding that the USMS is a joint employer is reversed, the Court will address the merits of plaintiff's

18 APA claim on remand.

19

20                     **CONCLUSION**

21      For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion

22 for summary judgment in its entirety. The pending motions in limine are denied as moot. [Docket ## 167, 168,

23 178, 193, 203, 213.]

24

25      **IT IS SO ORDERED.**

26

27 Dated: September 12, 2005

28

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

SUSAN ILLSTON
United States District Judge

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   NAOMI WALTON,                              No. C 03-01460 SI

9              Plaintiff,                      **ORDER GRANTING DEFENDANTS'**
        v.                                     **MOTION FOR SUMMARY JUDGMENT**
10
    U.S. MARSHALS SERVICE, et al.,
11
               Defendants.
12   _____/

13

14         Defendants have filed a motion for summary judgment.  Having carefully considered the argument of

15   counsel and the papers submitted on the motion,[1] the Court hereby GRANTS defendants' motion for summary

16   judgment.

17

18                              **BACKGROUND**

19         Plaintiff was employed for fourteen years as a court security officer ("CSO") by Akal Security.  CSOs

20   guard courthouse entrances, screen visitors, inspect packages and mail, and provide a security presence in

     courtrooms.  Akal has been contracted by the United States Marshal Service ("USMS") to provide security
21
     at federal courthouses in the Ninth Circuit. CSOs must meet physical requirements established in the contract
22
     between Akal and USMS through yearly physical examinations.
23
           Until 2000, CSOs were evaluated for medical conditions using a federal Civil Service form developed
24
     in the 1960's.  In 1999, the United States Judicial Conference, which oversees the judicial security program,
25
     requested a job-task analysis of the CSO position.  In response to that request, Dr. Richard Miller, Director
26

27   _____

28         [1] The Court has reviewed and considered Plaintiff's Statement of Recent Decision and supplemental
     memo, filed July 25, 2005 (docket #213).

*United States District Court*
*For the Northern District of California*

of Law Enforcement Medical Programs for the Office of Federal Occupational Health, produced a report recommending changes to the physical requirements for CSOs. Dr. Miller's report was largely adopted by the Judicial Conference, which directed the USMS to implement a number of changes to CSO medical standards. Some of these changes involved minimum hearing standards which must be met without the use of hearing aids. However, the Judicial Conference allowed CSOs who pass the hearing test without hearing aids to wear hearing aids on the job.

In November 2001, plaintiff underwent audiological testing. On January 17, 2002, Dr. Chelton, a medical review officer for the Office of Federal Occupational Health, reviewed plaintiff's medical submission and found that it did not meet the required standard. In response, plaintiff performed another audiogram test on April 5, 2002. Dr. Chelton reviewed the additional results on May 31, 2002 and found that plaintiff has "a significant hearing impairment according to the results of the tests provided." Specifically, plaintiff tested to have a disparity between her right and left ear in her ability to detect sound. This disparity would impact her ability to localize sound. Localizing sound is the "ability to identify the direction and distance of a sound source outside the head." Benay Decl, Ex. Z at USA000571. Based on the test results, Dr. Chelton concluded that plaintiff was not qualified to perform the job of CSO. As a result, USMS disqualified plaintiff from her position as a CSO. Due to her disqualification, plaintiff's employment with Akal was terminated.

Plaintiff brought suit in this Court, alleging that she has suffered and continues to suffer irreparable harm after being terminated. In her Third Amended Complaint, plaintiff has sued various individuals and federal agencies under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Administrative Procedures Act, 5 U.S.C. § 701 et seq. The Court denied plaintiff's motion for summary judgment on January 24, 2005. Defendants now bring their motion for summary judgment.

**LEGAL STANDARD**

**I.    Summary judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears

2

the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

## II.       Rehabilitation Act

To state a prima facie case under the Rehabilitation Act, plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability.  See Lucero v. Hart., 915 F.2d 1367, 1371 (9th Cir. 1990); Reynolds v. Brock, 815 F.2d 571, 573-74 (9th Cir. 1987).  Once a plaintiff has made out a prima facie case, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse employment action.  Once the defendant articulates such a reason, the plaintiff must then offer evidence to show that the defendant's proffered reason is a pretext for discrimination or retaliation for protected activity.  See Lucero, 915 F.2d at 1371.

## DISCUSSION

## I.       Proper defendants

Under the Rehabilitation Act, the proper defendant is the head of the government agency against which

3

1    discrimination is alleged.  See Barsen v. Department of the Interior, 896 F.2d 422, 423 (9th Cir. 1990); Dean

2    v. United States, 484 F.Supp. 888, 898-890 (D.C.N.D.  1980).  Defendants argue that the only proper

3    defendant for plaintiff's Rehabilitation Act claim is Attorney General Alberto Gonzales, as the head of the

4    Department of Justice.  Plaintiff, in her complaint, does not clearly designate which causes of action are brought

5    against each defendant.  Therefore, the Court GRANTS defendants' motion for summary judgment to all

6    defendants except the Attorney General for plaintiff's Rehabilitation Act claim.

7         Defendants also assert that Marc Farmer, the Chief of the Judicial Protective Services of the United

8    States Marshals Service, is the only proper defendant under plaintiff's Administrative Procedures Act claim.

9    Actions under 5 U.S.C. § 703 may be brought against "the United States, the agency by its official title, or the

10   appropriate officer."  Defendants argue that Farmer made the final agency decision involved in plaintiff's APA

11   claim by approving the decision that plaintiff was not qualified to continue her employment as a CSO.  Plaintiff

12   appears to argue that Farmer, the United States Marshals Service, and the United States Department of Health

13   & Human Services were all involved in plaintiff's termination.

14        Courts have recognized that "when an instrumentality of the United States is the real defendant," then

15   the plaintiff may name as defendant "the United States, the agency by its official title, or the appropriate officer."

16   Jones v. United States Drug Enforcement Agency, 801 F.Supp. 15, 19 (M.D. Tenn 1992).  Additionally, "[t]he

17   outcome of the case should not turn on the plaintiff's choice."  Id.  Therefore, the Court will allow plaintiff to

18   bring her APA claim against Farmer and the United States Marshals Service, as both were directly responsible

19   for the determination to terminate her employment.  However, the Court GRANTS defendants' motion with

20   respect to all defendants aside from Farmer and the USMS for plaintiff's APA claim.

21        Given the Court's holding that Attorney General Alberto Gonzales is the only proper defendant for

22   plaintiff's Rehabilitation Act claim and that Farmer and the USMS are the proper defendants for plaintiff's APA

23   claim, the Court now turns to defendants' arguments regarding the merits of those claims.

24

25   **II.      Rehabilitation Act**

26        **A.      Is plaintiff "disabled" as defined by the Rehabilitation Act?**

27   The Americans with Disabilities Act ("ADA"), whose standards of substantive liability are incorporated

28

4

in the Rehabilitation Act, defines "disability" as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); <u>Coons v. Secretary of the U.S. Dept. of the Treasury</u>, 383 F.3d 879, 884 (9th Cir. 2004).

### 1.    Physical impairment

Defendants request that the Court grant summary judgment with respect to plaintiff's claim that she is actually disabled because plaintiff has not presented any evidence that her hearing impairment substantially limits any major life activity in her daily life.  Plaintiff acknowledges that she is not actually disabled as defined under the Rehabilitation Act.  <u>See</u> Pl.'s Opp'n at 17.   Therefore, the Court GRANTS defendant's motion with respect to the first prong of the definition of "disability" under the Rehabilitation Act.

### 2.    Record of a physical impairment

In a single paragraph, plaintiff contends that her audiological testing results demonstrate that she has a record of a disability.  Specifically, plaintiff's test results found more than a 25dB difference between the hearing in the right and left ear.  Benay Decl., Ex. U at ¶ 5.

A record of an impairment "means [that the individual] has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k). "The purpose of this provision is largely to protect those who have recovered or are recovering from substantially limiting impairments from discrimination based on their medical history." <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1169 (1st Cir. 2002); <u>see also</u> 9 Lex K. Larson <u>Employment Discrimination</u> § 153.08, at 153-62 ("A worker without a current impairment may nevertheless benefit from . . . protection if he or she has a record of a substantially limiting impairment").  Plaintiff has not produced any evidence that she has a medical history of hearing loss, as plaintiff was not aware of her limitation until the testing under the new CSO medical standards.  Plaintiff also has not produced any evidence that she has recovered her ability to localize sound; in fact, plaintiff still has the impairment documented in her test results.  Therefore, the Court GRANTS defendants' motion with respect to the second prong of "disability" under the Rehabilitation Act.

United States District Court

For the Northern District of California

5

### 3.      Regarded as having an impairment

Plaintiff asserts that she is "disabled" under the Rehabilitation Act because the USMS "regarded" her as having an impairment that substantially limits the major life activities of working and hearing.

In <u>Equal Employment Opportunity Commission v. United Parcel Service</u>, 306 F.3d 794 (9th Cir. 2002),[2]  the Ninth Circuit stated that "the Supreme Court has held that a person is 'regarded as' disabled (at least for purposes of the major life activity of working) if the covered entity 'mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.'" 306 F.3d at 804 (citing <u>Murphy v. United Parcel Service, Inc.</u>, 527 U.S. 516, 521-22 (1999)).   The court then cited the following passage from <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 489 (1999):

> There are two apparent ways in which individuals may fall within this statutory definition: 1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or 2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities.  In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantial limiting impairment that one does not have or that one has a substantial limiting impairment when, in fact, the impairment is not so limiting.   These misperceptions often result from stereotypic assumptions not truly indicative of individual ability.

<u>EEOC v. UPS</u>, 306 F.3d at 803.

The court also recognized that perceived impairments must be "substantially limiting and significant." <u>Id.</u>  In <u>EEOC v. UPS</u>, the court dealt with an ADA claim by plaintiffs with monocular vision, who did not qualify as drivers because of defendant's vision protocol.  When evaluating the claim of a plaintiff alleging that defendant "regarded" him as disabled, the Ninth Circuit found that in order to satisfy the requirements provided in <u>Sutton</u>, plaintiffs must demonstrate that defendant "regarded their vision impairment as substantially limiting their overall ability to see for daily living."  <u>Id.</u> at 806.  Although <u>Sutton</u> applied to the major life activity of working, the court found the test to be equally applicable to seeing.  <u>Id.</u> at 804.  Therefore, the standard also applies for plaintiff's claim with respect to hearing.

---

[2] This Court's January 20, 2005 order denying plaintiff's motion for summary judgment paid insufficient attention to the standards set out by the Ninth Circuit in <u>EEOC v. UPS</u>.   Accordingly, they are set out at more length here.

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1

### i.      Working

2      Working is a major life activity under the ADA.  29 C.F.R. § 1630.2(i).  Additionally, the major life

3  activity of work contains a specific definition of "substantially limits":

4                    The term substantially limits means significantly restricted in the ability to
                     perform either a class of jobs or a broad range of jobs in various classes
5                    as compared to the average person having comparable training, skills, and
                     abilities.  The inability to perform a single, particular job does not
6                    constitute a substantial limitation on the major life activity of working.

7  29 C.F.R. § 1630.2(j)(3)(i).

8      Plaintiff presents no evidence that defendants mistakenly believe that plaintiff has a substantially limiting

9  impairment that plaintiff does not actually have.  Instead, the parties agree on the extent of plaintiff's impairment

10  based on the auditory test results.

11      Plaintiff has presented evidence that defendants believed that plaintiff's limiting impairment could

12  preclude her from various law enforcement positions.  Benay Decl., Ex. E at 289; Benay Decl., Ex. F at 78.

13  However, plaintiff's evidence is limited to active duty, weapons-carrying law enforcement positions.  "An active

14  law enforcement position [is] not a broad enough job category to be a substantial limitation on working."  Bass

15  v. The County of Butte, 2004 WL 1925468, * 5 (E.D. Cal. 2004).  For example, many courts have recognized

16  that "being declared unsuitable for the particular position of police officer is not a substantial limitation of a

17  major life activity."  Daley v. Koch, 892 F.2d 212, 215-16 (2d Cr. 1989); see also Rossbach v. City of Miami,

18  371 F.3d 1354, 1361 (11th Cir. 2004).

19      Instead, the proper scope of plaintiff's occupation is "law enforcement generally."  Hughes v. Bedsole,

20  48 F.3d 1376, 1388-89 (4th Cir. 1995); Papadopoulos v. Modesto Police Department, 31 F.Supp.2d 1209,

21  1221 (E.D. Cal. 1998) (holding that position of background investigator was "law enforcement work"); Smaw

22  v. Virginia Department of State Police, 862 F.Supp. 1469, 1475 (E.D. Va. 1994) (holding that former state

23  trooper demoted to dispatcher was still employed in the law enforcement field).   Plaintiff has presented no

24  evidence of defendants' opinion regarding jobs in the field of law enforcement, other than active duty, weapons-

25  carrying government law enforcement positions; therefore, plaintiff has failed to present any evidence in support

26  of her claim that defendants regarded her as significantly restricted in performing a "class" or "broad range" of

27  jobs under the Rehabilitation Act.  The Court GRANTS defendants' motion for summary judgment with

28

respect to the life activity of working.

### ii.    Hearing

Plaintiff alleges that defendants regard plaintiff as substantially limited in the major life activity of hearing. 29 C.F.R. § 1630.2(i); see 29 C.F.R. § 1360.2(j)(ii) (defining "substantial limitation" as "significantly restricted as to the condition, manner, or duration under which an individual can perform . . . as compared to . . . the average person in the general population").  Plaintiff must demonstrate that defendants regarded plaintiff as having an impairment that prevents or severely restricts use of her hearing in daily life.  EEOC v. UPS, 306 F.3d at 806.  It is not sufficient for plaintiff to demonstrate that defendants regarded plaintiff as having a limiting, but not substantially limiting, hearing impairment.  Id.

Plaintiff was found to be unable to localize sound based on auditory testing established by defendants. However, defendants' hearing requirement does not establish that defendants regard plaintiff as substantially limited in the life activity of hearing.  Sutton, 527 U.S. at 490.  Instead, "an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment . . . are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job."  Id. at 490-91.

Defendants have presented evidence that the hearing requirements solely relate to performing the essential functions of the CSO position.  Roth Decl. at ¶ 8; Miller Decl. at ¶12; Barson Decl. at ¶ 5(a).  In fact, Judge Roth, the chair of the United States Judicial Committee on Security and Facilities, stated that the policy "was in no way intended to reflect a CSO's ability to engage in life activities."  Roth Decl. at ¶ 8; see also Miller Decl. at ¶ 12; Barson Decl. at ¶ 5(a).  If the USMS recommends removal of the CSO based on medical disqualification, "the USMS does not consider whether the CSO's medical condition . . . affects his or her day-to-day activities. We are only concerned with whether the individual meets the CSO medical standards and is capable of performing the essential functions of the CSO position."  Farmer Decl. at ¶ 36.

The determination of the essential CSO functions was made based on a report by Dr. Miller.  In order to prepare his report, Dr. Miller visited five district courthouses and spoke with CSOs, federal judges, U.S. Marshals and Deputy U.S. Marshals.  Miller Decl. at ¶ 8.  Dr. Miller identified 29 essential job functions, which

included the ability to determine the location of sound.  Farmer Decl. at ¶ 26.  Dr. Miller asserted that "[t]he safety of the federal judiciary, court personnel, and the public depends on CSO's ability to hear, localize, discriminate, recognize, and/or understand a variety of environmental and speech sounds."  Miller Decl. at ¶ 20.  Specifically, Dr. Miller found that CSOs "must be able to discern the direction of a disturbance or detect an approaching threat (sound localization)."  Id. at ¶ 22.

Plaintiff took two medical examinations for the CSO position.  Supp. Chelton Decl. at ¶¶ 7, 9. The results of both examinations were reviewed by Dr. Louis Chelton, a reviewing physician for Law Enforcement Medical Programs at the department of Federal Occupational Health.  Id. at ¶ 1.  Dr. Chelton found that plaintiff's "pure tone audiogram did not meet the required standard."  Supp. Chelton Decl. at Ex. 1.  According to Dr. Chelton the disparity between her right and left ear in her ability to detect sound would "impact her ability to perform the essential job function of localizing sound."  Id. at ¶ 7.

Therefore, the "evidence bearing on [defendants'] perception of [plaintiff's] impairment indicates that its perception was not based upon speculation, stereotype, or myth," but was based upon medical test results. Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995). When Dr. Chelton found that plaintiff was not medically qualified for the CSO position, he stated that "[w]ith only one functioning ear, you are unable to localize the direction of sound, an essential job function."  Benay Decl., Ex. N at 2.  However, none of the above evidence demonstrates that defendants regarded the inability to localize sound and discern the direction of a disturbance as a substantial limitation on hearing in plaintiff's daily life.

Plaintiff presents the declaration of Dr. Robert Sweetow, Director of Audiology at the University of California.  See Supp. Simmons Decl., Ex. 1.  In that declaration, Dr. Sweetow states that the ability to localize sound is "essential" to the manner in which individuals use their sense of hearing.  Id. at 1. He concludes that "being unable to localize sound severely/significantly restricts one's hearing as compared to how unimpaired people normally hear in everyday life."  Id.  However, this evidence does not demonstrate that defendants regarded plaintiff's hearing impairment as "substantially limiting" her "overall ability to [hear] for daily living." EEOC v. UPS, 306 F.3d at 794.  Instead, Dr. Sweetow provides his medical opinion regarding the general impact of an individual's inability to localize sound.      Plaintiff also refers to a draft report on auditory localization prepared for United States Immigration and Naturalization Services by Dr. Lynn E. Cook, an

9

United States District Court

For the Northern District of California

occupational audiologist for the U.S. Naval Medical Center.  See Benay Decl., Ex. Z.  In the October 2002 report, Dr. Cook states that auditory localization "allows us to pinpoint the direction of a yell for help or other sound of interest, locate an air leak on a vehicle, locate the position of another person, . . . locate sounds to the floor above or below, [and] locate the direction and distance of a moving vehicle or an emergency siren."  Id. at USA000573.  Dr. Cook also states that "[p]erhaps most importantly, auditory localization allows the listener to quickly locate and attend to the speaker, especially when conversation switches rapidly between speakers." Id.  However, Dr. Cook found that "[w]hile visual localization of a sound source is generally just as accurate, it is not nearly as efficient (quick) as auditory localization."  Id.  In summary, Dr. Cook determined that "[d]ifficulty in localizing environmental sounds can be inconvenient, and in some situations the impaired listener may be in danger."  Id.

However, Dr. Cook's report does not demonstrate that defendants regarded plaintiff as disabled as defined under the Rehabilitation Act for many reasons.  It is not clear that this excerpt is sufficient to find that Dr. Cook finds individuals who are unable to localize sound to be significantly limited in hearing in their daily life.  Although Dr. Cook lists a number of activities affected by the inability to localize sound, she describes these problems as "inconvenient."

Assuming Dr. Cook finds that individuals who cannot localize are substantially limited in the activity of hearing, plaintiff has not demonstrated that defendants also regarded those individuals as disabled. Dr. Cook was not responsible for creating the CSO medical requirements; instead, she was "periodically consult[ed]" by Dr. Miller. Miller Decl. at ¶ 24.  Dr. Miller was responsible for drafting the policy and has testified that he did not consider an individual's ability to engage in life activities when creating the CSO medical standards. Id. at ¶ 12.  Dr. Miller also did not rely upon Dr. Cook's opinions with respect to everyday activities, as the "standards reflect input we received from [Dr. Cook] regarding the hearing demands of this type of position and the problems associated with hearing aids."  Id. at ¶ 24.  There is no evidence that defendants considered Dr. Cook's positions with respect to the daily life activity of hearing.  Again, every individual responsible for the creation and implementation of the CSO medical standards stated that the policy does not reflect any opinion about everyday life activities. Roth Decl. at ¶ 8; Miller Decl. at ¶ 12; Barson Decl. at ¶ 5(a); Farmer Decl. at ¶ 36.

United States District Court

For the Northern District of California

1    Even if Dr. Cook's findings are applied to defendants, it is not sufficient to find that defendants regarded

2    plaintiff as disabled in the major life activity of hearing under the Rehabilitation Act.  In Sutton, the Supreme

3    Court held that in order to find that a person is regarded as disabled, "it is necessary that a covered entity

4    entertain misperceptions about the individual – it must believe either that one has a substantial limiting

5    impairment that one does not have or that one has a substantial limiting impairment when, in fact, the impairment

6    is not so limiting."  Sutton, 527 U.S. at 489.

7    Plaintiff has not presented any evidence that defendants have any "misperceptions" with respect to

8    plaintiff's hearing.  Plaintiff does not dispute the test results from multiple medical examinations or defendants'

9    assertion that plaintiff, without hearing aids, has difficulty localizing sound.  Nor does plaintiff present any

10   evidence that defendants believed plaintiff's hearing loss to be more substantial than it really was. Plaintiff also

11   does not present any evidence that defendants have a misperception regarding the limitations of her impairment.

12   In fact, plaintiff's expert, Dr. Sweetow, testifies that the inability to localize sound "severely/significantly restricts

13   one's hearing as compared to how unimpaired people normally hear in everyday life."  Supp. Simmons Decl.,

14   Ex. 1 at 1.   Thus, plaintiff's expert finds that the limitation is as significant, if not more significant, as Dr. Cook's

15   finding that the inability to localize sound is "inconvenient" because impaired individuals have difficulty

16   performing some tasks.  Given the overlap between Dr. Sweetow's and Dr. Cook's findings, plaintiff has failed

17   to present any evidence that defendants had any "misperceptions" about plaintiff.  Therefore, Dr. Cook's

18   testimony does not support plaintiff's assertion that defendants' regarded her as disabled under the

19   Rehabilitation Act.

20   Plaintiff's remaining evidence consists of the defendants' medical requirements for the CSO position

21   and Dr. Chelton's review of plaintiff's examination results.  As the Supreme Court found in Sutton, a hearing

22   requirement alone is not sufficient to establish that defendants regarded plaintiff as substantially limited in the

23   major life activity of hearing.  Dr. Chelton's report only considers plaintiff's examination results with respect

24   to her ability to perform the essential CSO functions.  Dr. Chelton makes no reference to disabilities or

25   limitations on daily life activities.  Therefore, plaintiff has failed to present evidence that defendants regarded

26   plaintiff as substantially limited in the major life activity of hearing and the Court GRANTS summary judgment

27   in favor of defendants.

28

11

**United States District Court**
For the Northern District of California

1

2          **B.      Summary**

3          As discussed above, plaintiff has failed to demonstrate that she is a person with a disability under any

4   of the three definitions of disability in 42 U.S.C. § 12102(2).  Being a person with a disability as defined under

5   42 U.S.C. § 12102(2) is one of the three requirements to stating a prima facie case under the Rehabilitation

6   Act.  Given that plaintiff has failed to present a prima facie case under the Rehabilitation Act, the Court

7   GRANTS summary judgment in favor of defendant for plaintiff's Rehabilitation Act claim.

8

9   **III.      Administrative Procedures Act**

10         Defendants bring a motion for summary judgment against plaintiff's Administrative Procedures Act

11  claim.  Plaintiff brings this claim in the alternative, in order to protect this cause of action if an appellate court

12  finds that the USMS is not a joint employer of plaintiff.  However, this Court has found that the USMS meets

13  the requirements of the joint employer test; therefore, plaintiff does not have a valid claim against defendant

14  under the APA at this time.  Defendants ask the Court to rule on the merits of plaintiff's claim at this time in

15  order to avoid remand.  The Court will not address the merits of a claim that currently is invalid.  The Court

16  GRANTS defendants' motion for summary judgment with respect to plaintiff's APA claim; however, if the

17  Court's holding that the USMS is a joint employer is reversed, the Court will address the merits of plaintiff's

18  APA claim on remand.

19

20                                        **CONCLUSION**

21         For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion

22  for summary judgment in its entirety.  The pending motions in limine are denied as moot.  [Docket ## 167, 168,

23  178, 193, 203, 213.]

24

25         **IT IS SO ORDERED.**

26

27  Dated: September 12, 2005

28

                                        12

SUSAN ILLSTON
United States District Judge